UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

               Plaintiff,

  vs.

ANDREW V. DAVIS,

               Defendant.

NO. CR-11-025-JLQ

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO SUPPRESS**

## I. **Introduction**

Based upon evidence found during a search of his personal computer at his home pursuant to a state court search warrant, Defendant Andrew Vaughn Davis ("Davis") is charged with possession and receipt of child pornography in violation of 18 U.S.C. § 2252A, the receipt charge carrying, according to the Government's penalty slip (ECF No. 3),  a mandatory minimum sentence of imprisonment of not less than fifteen years. There is no charge or contention that the Defendant played any role in the production of the child pornography.

Before the court is Defendant's Motion to Suppress Evidence (ECF No. 30) wherein he claims that the search warrant used to seize the evidence in this case was obtained in violation of the Fourth Amendment of the United States Constitution in that the applying  officer deliberately or recklessly failed to disclose to the issuing state Superior Court judge that the minor, referred to as G.T., who had allegedly had sexual contact with the Defendant six months previously,  had, *inter alia,* recently provided false information to law enforcement officers, including to the affiant herein and made a false claim to the officers of an alleged sexual assault by a fellow student.  It is undisputed that this information concerning the credibility, or lack thereof, of G.T. was not disclosed to the state court judge who issued the search warrant for the Defendant's computer.

ORDER - 1

The Government argues that it was unnecessary to provide the issuing judge with the information concerning the prior false sexual assault accusations by the minor and that even if the warrant affidavit was supplemented with the omitted information, there would still be sufficient evidence to support probable cause.

Defendant requested a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), and an evidentiary hearing was held before the undersigned on Defendant's Motion to Suppress Evidence on April 21, 2011.  Defendant Andrew Vaughn Davis was present and represented by Aaron Rasmussen, Esq.   Assistant United States Attorney Stephanie Lister appeared on behalf of the Government.  At the conclusion of the evidentiary hearing, the court requested supplemental briefing, which has now been provided. (ECF No. 42 & 43).  This opinion and order is intended to memorialize and supplement the oral rulings of the court.

## II.  Findings of Fact

The search warrant for the Defendant's personal computer was issued by Stevens County Superior Court Judge Allen C. Nielsen on November 18, 2008. (ECF No. 32, Ex. A).  The officer offering the affidavit in support of the warrant was Stevens County Deputy Sheriff Iain Ashley.  Officer Ashley began his law enforcement career as a patrol deputy sheriff in 2002, and became a detective in November of 2007.  The affidavit of Deputy Ashley contained information incorporated in a City of Spokane police report stating that  a female minor, who was 15 years old at the time, had claimed that she had consensual sexual intercourse with the Defendant Davis some six months prior to the report.  The minor is hereinafter referred to as "GT".

Deputy Ashley did not interview the minor herself, but relied upon the police report of Officer Eckersley of the City of Spokane Police Department.  GT had provided the claimed sexual contact information to Officer Eckersley who then prepared a report that was forwarded to Detective Ashley.  GT had also provided Eckersley with some Myspace chat logs, portions of which were contained in the Ashley affidavit, which the Government argues were consistent with the sexual contact allegations. Those logs are

discussed *infra*.  There was nothing in the chat logs that referred to pornography of any kind.   In addition to the information provided by GT to Officer Eckersley the only other information contained in the affidavit was that Davis had two prior convictions: 1) 3rd Degree Rape (1998) and 2) 3rd Degree Rape of a Child (1998).

Deputy Ashley had previous law enforcement contact with GT, none of which was revealed to the state court judge in the affidavit.  Ashley's first interaction with GT occurred when she was 13 years old (which would have been approximately 2006, as she was 15 years old in 2008).  Ashley was at the time a patrol deputy and responded to a call at the residence.  Ashley testified: "A child had called.  I believe it was her [GT] had called about being disciplined by a parent for I believe it was something to do with using the computer."  The result of the investigation was that the allegations were determined to be "unfounded."  Ashley determined it was a reasonable discipline issue, and there was no basis for criminal charges.

Deputy Ashley's next interaction with GT was on March 4, 2008.  At this time GT had made an allegation of a sexual assault of her by a 15 year-old boy at the school (Cody Little who testified during the *Franks* hearing).  GT claimed that Cody had pinned her to the wall in the school hallway, kissed her, tried to stick his hands down her pants, and threatened her not to tell anyone.  GT's description was very detailed, including that her hands were pinned against the wall over her head, that Cody tried to stick his hands down her pants and struggled with her belt, that his hand made it down about 4-inches to skin on skin contact, but not all the way to the pubic region.  GT recounted that Cody kissed her, punched her in the stomach, she kneed or kicked him, and that the entire episode lasted about 10 minutes.  Deputy Ashley's report from March 4, 2008, also recounted a conversation he had with GT's mother: "She also told me that she had been having trouble at home with GT and brought up a past call our office had handled at the house in which GT reported an assault that was unfounded.  She also advised that GT had described a similar event to the one I was investigating but stated that it had allegedly occurred when GT was 13 years old." (ECF No. 32 Ex. C).

ORDER - 3

On March 6, 2008, GT recanted her allegations against Cody.  She executed a voluntary statement which indicated she was "very annoyed" with Cody because he had previously asked her to have sex so she "told Mr. St. Clair [the principal] a different story.  He [Cody] didn't try to stick his hands down my pants or anything except for asking to have sex again." (ECF No. 32, Ex. D).  Deputy Ashley was aware that GT had recanted her allegations against Cody and that the allegations were false.  Detective Ashley informed Cody and his mother that GT had recanted the allegations and that GT had "confessed to making up the entire story." (ECF No. No. 32, Ex. E).  Deputy Ashley prepared a report dated March 6, 2008, which stated: "I picked up a voluntary statement from [GT].  In it she states that there was no assault and that her and C. Little only spoke while in the hallway." (Govt's Ex. 2 from Evidentiary Hearing).  Ashley also discussed with Cody's mother that GT was in foster care and some discussion was had concerning mental health counseling.  According to Cody's mother, Lori Little, Deputy Ashley told her GT's story was made up, that it was not the first time GT had done this sort of thing, and that GT had mental and emotional problems. (ECF No. 32 Ex. E).  Ms. Little told Ashley that she wanted charges brought against GT for the false accusations, but Ashley advised against such action. None of this critical and highly relevant credibility information of prior false sexual assault allegations by GT, which was within Deputy Ashley's knowledge, was disclosed by Ashley to the judge who he was asking to issue a search warrant for Davis's personal computer.

The affidavit to obtain the computer search warrant contains no information about Detective Ashley's prior interactions with GT or her prior false statements.  As pointed out in cross-examination, either GT's initial report to police of the February 28, 2008 Cody sexual assault incident was false, or the voluntary statement recanting her initial report contained false statements.  Additionally, Ashley knew that two years prior GT had made a call to police which turned out to be "unfounded."  Since the basis of Deputy Ashley's application for a search warrant for the Defendant Davis's computer was the alleged statements of GT, her credibility, or the lack thereof, was of critical import in an

evaluation by a judge concerning whether probable cause existed for the issuance of a search warrant for the Defendant's computer.

The Ashley affidavit recounts GT's report to Officer Eckersley. In brief, it states that in a November 2008 interview with Officer Eckersley, GT stated that sometime between May 15, 2008 and May 20, 2008, she was at Davis' house with Davis's daughter (who is approximately GT's age) and another minor male. She alleged that Davis provided alcohol, and she and Davis had sex. The affidavit states that "she never asked him to stop," and that she "was not threatened or forced," but regardless, Davis' actions, if true, would have been criminal, given GT's age.

Officer Eckersley's Spokane police report is more detailed than what was presented in the search warrant affidavit, but Deputy Ashley was in possession of that report. The report includes that GT had been living with her sister since the time that GT was arrested for assaulting her mother. (ECF No. 38-1). GT's sister told GT that Davis was a registered sex offender on the same day (in November 2008), and just prior to GT reporting she had allegedly had sex with Davis. GT reported that they had sex "sometime in late May to early June." She told Eckersley that she was making out with Davis on a porch swing, and then they moved to the ground and had sex. She described it as "consensual."

Despite knowing of GT's credibility issues including her history of a prior false report of a sexual assault[1], Ashley did not present this information to the Superior Court judge, nor did Ashley take steps to corroborate GT's story. Detective Ashley did not contact Eckersley to discuss his report, or to inform Eckersley of his knowledge of GT's prior allegations. Ashley looked up Davis' criminal history and called GT's mother. He did not personally interview GT. Other than these steps, he frankly admitted during his

---

[1]Ashley also did not advise the Superior Court judge of the prior "unfounded" allegation by GT against her father, or that she had been arrested for assaulting her mother. Ashley had knowledge of these events either personally or from the Eckersley report.

ORDER - 5

*Franks* hearing testimony, that he conducted no other investigation prior to requesting the warrant. He did not contact the counselor who GT allegedly first reported to that she had sex with Davis. He also did not contact the other individuals who were allegedly at the house on the night that Davis and GT had sex.

Deputy Ashley testified that the only search warrant training he had prior to November 2008 was in the police academy in 2001. He then received some on-the-job training when he became a detective, but did not categorize this as "formal" training. At the time he applied for the search warrant at issue in this case, he had only prepared approximately five search warrant affidavits.

The court finds that GT's prior false statements of sexual assault against Cody Little, of which Deputy Ashley was aware, were material and were improperly omitted from his affidavit. The court finds that this information was deliberately omitted, although the deliberate omission may have been by reason of insufficient training. A failure to adequately train detectives concerning Fourth Amendment obligations is reckless. A failure to train does not excuse a Constitutional violation. See *United States v. Simmons*, 2011 WL 1045527 (N.D. Ill. March 22, 2011) ("Any failure to train Officer Murphy on these matters is unfortunate and does not excuse the recklessly misleading application for search warrant that was undertaken in this case."). The court finds Deputy Ashley's proffered reasons for not including GT's prior false sexual claims and for not conducting an adequate investigation to corroborate GT's statements to be inadequate and without factual or legal support. The court does not find credible Detective Ashley's initial statement on cross-examination that at the time he submitted the warrant affidavit he had "no concerns" about GT's reliability. He later stated during cross-examination that at the time of his affidavit he knew that GT had previously submitted a false statement to police, that during the March 2008 "Cody" sexual assault investigation he had concerns about GT's reliability and concerns about her credibility. None of this was disclosed to the judge who was to make the determination as to whether a search warrant should issue.

ORDER - 6

### III.  Legal Conclusions

The Fourth Amendment commands that, "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation."  If the affiant is relying on an informant, the affidavit must recite "some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed...was 'credible' or his information reliable." *Franks v. Delaware*, 438 U.S. 154, 165 (1978).  "[I]t would be an unthinkable imposition upon his [the issuing judge's] authority if a warrant affidavit, revealed after the fact to contain a deliberately or reckless false statement, were to stand beyond impeachment." *Id.*  Thus, the Supreme Court recognized that a warrant could be challenged if based on deliberately or recklessly false statements.

The Ninth Circuit has expressly extended the *Franks* requirement to omissions.  See *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985) ("we expressly hold that the Fourth Amendment mandates that a defendant be permitted to challenge a warrant affidavit valid on its face when it contains deliberate or reckless omissions of facts that tend to mislead.").  If a court determines that a warrant is based on false statements or reckless omissions, the affidavit must be "purged of those falsities and supplemented by the omissions." *United States v. Stanert*, 762 F.2d 775, 782 (9th Cir.1985).  The Ninth Circuit stated: "We must determine, therefore, whether the affidavit, once corrected and supplemented, would provide a magistrate with a substantial basis for concluding that probable cause existed." *Id.*

The Ninth Circuit has also indicated in *United States v. Hall*, 113 F.3d 157 (9th Cir. 1997), that sufficient credibility problems with an informant may justify disregarding entirely the informant's statement.  The *Hall* court states:

> If the defendant establishes perjury or reckless disregard of the concealment of material information by a preponderance of evidence, and with the concealed material provided, the resulting evidence is insufficient to establish probable cause, then the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause were lacking.

*Id.* at 159 citing *Franks*.  In *Hall*, the warrant was based on the testimony of an informant named Dang, and law enforcement failed to disclose Dang's prior convictions to the

ORDER - 7

Magistrate, including a prior conviction for falsely reporting a crime. The Ninth Circuit stated: "If Dang was not worthy of belief, then this would not amount to probable cause." *Id.* at 159. As the determination of probable cause is a totality of the circumstances determination, the better approach appears to be to consider whether Deputy Ashley's warrant affidavit, as presented to Superior Court Judge Nielsen, and supplemented with the omitted information concerning GT's prior false sexual assault allegation and lack of credibility history, made a sufficient showing of probable cause.

The court has determined that Detective Ashley committed a reckless or deliberate omission by failing to disclose GT's history of prior false statements. The *quaere* then is whether probable cause existed, under a totality of the circumstances evaluation, when considering GT's reliability and credibility problems.

**A. Probable Cause**

The probable cause standard "protects citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime, while giving fair leeway for enforcing the law in the community's protection." *Maryland v. Pringle*, 540 U.S. 366, 370 (2003). Probable cause is a "fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules." *Id*. at 371. It is a concept "incapable of precise definition" which depends on the "totality of the circumstances." *Id.* "The substance of all the definitions of probable cause is a reasonable ground for belief of guilt." *Id.*

Here, Deputy Ashley's affidavit had essentially three components: 1) the statements provided by GT to Officer Eckersley as recorded in his report and forwarded to Deputy Ashley; 2) the Myspace chat logs; and 3) Davis' criminal history. If the Superior Court judge had been informed that GT had recently made a false allegation of sexual assault and had previously made an "unfounded" allegation against her father concerning parental discipline, the judge would have likely afforded her statement little weight. The Myspace chat logs were provided by GT, and thus the veracity of those chat logs, their meaning, and weight without GT's attribution, would also be reasonably

ORDER - 8

questioned.

The first Myspace chat log is allegedly from May 20, 2008, with the name of the alleged speaker having been provided by GT. As so identified by GT the log would read:

Andrew Davis: ok. hey delete this after a few ok, but you know how (juveniles name removed) likely told you everything her an M. did, did u do the same to her? :) just got to know so I know to forget it happened for life or prepare something nice to say to my princess????? Sorry to mention it I know you don't want me to.

GT: Nope I didn't

Andrew Davis: k, k, um just wanted to do what u did so im glad i know now k, im sure its hard for you and all

(Affidavit for Search Warrant, ECF No. 32, Ex. A). The statement is ambiguous. It does not contain any explicit references to sex, or contain any inappropriate language. Following the excerpt from the chat log, the affidavit states: "According to Officer Eckersley's report GT told him that the conversation above is in reference to her and Andrew Davis having sex." (ECF No. 32 Ex. A p. 4) Thus, with GT's credibility and reliability in question, the ambiguous statement bears even less weight.

The second Myspace chat of May 21, 2008, is more concerning, and could be interpreted to contain sexual innuendo. With GT's identification of the speakers, it reads:

Andrew Davis: I love having you around here, C. loves you too!!

GT: Of course C. likes having me around. I spend so much time with my 4 year old and 5 year old nieces that little kids are just easy towards me

Andrew Davis: and apparently so are older guys

GT: Oh my gawd

Andrew Davis: don't worry im sure they cant help it sine you are so fuckin hott and tempting

GT: And we move on to a new subject

ORDER - 9

(Affidavit for Search Warrant, ECF No. 32, Ex. A).  There again is no specific reference to sexual relations.  Davis allegedly wrote, "you are so fucking hott and tempting."  Although it is clearly inappropriate and distasteful for an adult male to make such a comment to a 15-year old girl, such comment does not constitute reasonable ground for belief that rape of a child 3rd degree had been committed, nor is such a comment concerning child pornography.

The affidavit also recounts that Detective Ashley contacted GT's mother, prior to applying for the warrant.  Ashley states: "She advised me that she was aware of the incident and she had suspected 'something' had taken place between GT and Andrew Davis."  Ashley testified that he "didn't disclose with her you know specifics of the case," and that she "basically told me she had suspected something."  Suspecting a vague 'something', falls far short of establishing probable cause.

Lastly, this brings the court to Davis' past criminal history.  He had two prior convictions from ten years prior.  A court may certainly consider criminal history in determining probable cause, but "criminal history alone cannot establish reasonable suspicion or probable cause." *Burrell v. McIlroy*, 464 F.3d 853, 858 n. 3 (9th Cir. 2006).  The affidavit stated that his prior convictions were for Rape 3rd degree and Rape of a child 3rd degree. Here he was under suspicion of having committed Rape of a child 3rd degree, and therefore the prior criminal history was probative.  However, as stated above, that history alone would not support a finding of probable cause.  Additionally, the convictions were 10 years old at the time of the warrant application.  Now Justice Sotomayor, when writing for the Second Circuit, stated that an 18-year old conviction for sexual abuse of a minor cited in a warrant application in a child pornography prosecution "should have been only marginally relevant because the conviction was stale." *United States v. Falso*, 544 F.3d 110, 122 (2nd Cir. 2008).

Everything in the Ashley affidavit, except for the criminal history, is tainted by the deliberate or reckless omission of GT's prior credibility problems.  It appears that this could justify disregarding all the information provided by GT. See *United States v. Viers*,

ORDER - 10

251 Fed.Appx. 381 (9th Cir. 2007) ("Deleting anything in the affidavit that, on the record and findings, might be tainted by deliberate or reckless misstatement or omission, the district court was left with the following...."); see also *United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir. 2000) ("If an informant's history of criminal acts involving dishonesty renders his/her statements unworthy of belief, probable cause must be analyzed without those statements."). In *Viers*, the court found that after deleting such information, there were still four pieces of information that supported probable cause. In this case, there are at most two non-GT furnished items: 1) criminal history and 2) GT's mother's statement that she believed 'something' had happened between GT and Davis. Like in *Hall*, there is a lack of non-GT furnished information. In *Hall* the court stated: "there was virtually no evidence at all without the informant's testimony. Without relying on what [the informant] said, all the magistrate knew about Hall was that he had been seen driving into a trailer court parking space in a red and white pickup truck." 113 F.3d at 160. Here, it was the unreliable GT who provided the Myspace chat records and described who the speakers were and what they were allegedly about. It was also GT's representation that the chat logs were between her and Davis. Even assuming they were written by Davis, without giving weight to GT's interpretation of the chats, they are vague, open to interpretation, and contain only one clearly inappropriate statement. Even the most inappropriate statement is open to interpretation. It appears to say that GT is "easy" to "older guys" because she is "so fuckin hott and tempting." It does not reference a sex act occurring between GT and Davis.

Given Deputy Ashley's undisclosed knowledge of GT's prior false allegations, obtaining corroborating information was of heightened importance. However, Ashley conducted virtually no independent investigation. He did not speak to GT prior to seeking the warrant. He did not speak to Officer Eckersley, or to GT's counselor (to whom GT first reported having sex with Davis), nor did he interview the other individuals present at the house on the night GT and Davis allegedly had sex.

Judges depend on law enforcement to provide truthful information about a

complaining witness's credibility. *United States v. Hall*, 113 F.3d 157, 160 (9th Cir. 1997) ("The state magistrate depended on the prosecutor and the trooper to present him with the truth, and to bring to his attention problems with their informant's credibility."). In this case, Detective Ashley did not provide the state court judge with any of the information he knew regarding GT's prior false allegations of sexual assault against Cody, her prior "unfounded" complaint to police regarding her father, or that she has been arrested for assaulting her mother. In fact, there is a sub-section heading in the affidavit entitled, "Informants and Basis of Reliability," (ECF No. 32 Ex. A p. 2). That sub-section is entirely blank, no information is provided. Detective Ashley testified that he did not provide any additional information when he appeared before Judge Nielsen.

## IV. Conclusion

The protections of the Fourth Amendment are not lessened based on the nature of the crime investigated. *United States v. Gourde*, 440 F.3d 1065, 1075 (9th Cir. 2006) ("Given the current environment of increasing government surveillance and the long memories of computers, we must not let the nature of the alleged crime, child pornography, skew our analysis or make us "lax" in our duty to guard the privacy protected by the Fourth Amendment.") see also *United States v. Krupa*, 633 F.3d 1148 (9th Cir. February 11, 2011) (Berzon, J. *dissenting*) ("I cannot help but think that had this case involved anything but child pornography, it would come out differently. I fear that understandable abhorrence of this particular crime can infect judicial judgment. We would do well to remember that the protections of the Fourth Amendment do not depend on the nature of the suspected criminal activity.").

As stated by now Justice Sotomayor, courts are not insensitive to the need for law enforcement to have a certain amount of flexibility in conducting criminal investigations, however, requiring a sufficient showing of probable cause "will simply focus law enforcement efforts on those who can reasonably be suspected of possessing child pornography. If this proves to be a hindrance, it is one the Fourth Amendment demands." *United States v. Falso*, 544 F.3d 110, 124 (2nd Cir. 2008) (internal citations

and quotations omitted).

When considering the serious credibility concerns surrounding GT, which were deliberately or recklessly omitted by Detective Ashley, the court finds the information contained in the affidavit was insufficient to establish probable cause. The court finds that had the issuing state court judge been truthfully provided with the omitted information about GT, the judge would not have issued the warrant without requiring Detective Ashley to conduct further investigation and obtain corroborating information. Accordingly, the Motion to Suppress (ECF No. 30) must be, and is, **GRANTED**.

The court does not reach this conclusion lightly, nor does this decision minimize the very serious nature of the allegations against Davis. However, the Fourth Amendment commands that warrants be issued only "upon probable cause" and supported by truthful information ("supported by Oath or affirmation"), and the warrant in this case was not. The Ninth Circuit has stated: "In the absence of countervailing evidence to bolster the informant's credibility or the reliability of the tip, an informant's criminal past involving dishonesty is fatal to the reliability of the informant's information, and his/her testimony cannot support probable cause." *United States v. Reeves*, 210 F.3d 1041, 1045 (9th Cir. 2000)(emphasis added). Although GT did not have a criminal conviction for a crime of dishonesty, it is clear that she had made false statements to the police regarding the alleged sexual assault by Cody Little, and two years prior had made an "unfounded" allegation against her father. Detective Ashley conducted virtually no investigation to corroborate the statements of GT, and thus presented no countervailing evidence to bolster GT's credibility or reliability. A judge reviewing all of these circumstances with knowledge of the serious credibility issues of GT, GT's mother's vague suspicion that "something" had occurred, the GT identified Myspace chats, and Davis' dated criminal history would have had such serious questions as to the existence of probable cause that he would have found no substantial basis for concluding probable cause existed and would have required further investigation and inquiry prior to the issuance of a search warrant for the Defendant's personal computer.

The Supreme Court has stated that "the exclusionary rule's prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures." *United States v. Crews*, 502 F.3d 1130, 1136 n.4 (9th Cir. 2007) *Id.* citing *United States v. Calandra*, 414 U.S. 338 (1974). "Search and seizure laws are designed to punish police for improperly compromising defendants' rights for the sake of investigatory economy." *Id.* The events of this case and the court's decision are not the result of any punishment motivation. However, deterrent and education of the agency and officer involved is a hoped for result. The exclusionary rule also serves the "imperative of judicial integrity." *Elkins v. United States*, 364 U.S. 206, 223 (1960). The federal courts cannot be "accomplices in the willful disobedience of a Constitution they are sworn to up-hold." *Id.* For all the aforesaid reasons:

**IT IS HEREBY ORDERED:**

   1. Defendant's Motion to Suppress (ECF No. 30) is **GRANTED**.

   2. The court **declares excludable** from Speedy Trial Act calculations the following period: Pursuant to 18 U.S.C. § 3161(h)(1)(D), the period from April 8, 2011, the date the Defendant filed the Motion to Suppress, through the date of this Order.

   **IT IS SO ORDERED**. The District Court Executive is directed to enter this Order and to provide copies to counsel.

   **DATED** this 27th day of May, 2011.

s/ Justin L. Quackenbush<br>
JUSTIN L. QUACKENBUSH<br>
SENIOR UNITED STATES DISTRICT JUDGE